# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche Manning | Sitting Judge if Other than Assigned Judge | Ian H. Levin |
|---|---|---|---|
| **CASE NUMBER** | 99 C 2057 | **DATE** | 6/5/2000 |
| **CASE TITLE** | Ty, Inc. vs. The Jones Group, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 6/29/2000 at 11:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter memorandum opinion and order. Plaintiff's motion for preliminary injunction [9-1] is granted. Pursuant to Rule 65(c) F.R.C.P., the preliminary injunction (A) is stayed pending determination of an appropriate bond and (B) shall issue (via execution of Plaintiff's proposed order with court amendment) only upon posting of such bond. Status hearing regarding scheduling a subsequent hearing date as to the proper bond amount, is set for 6/29/00 at 11:00. No written filings regarding bond shall be filed, if at all, until after the status hearing.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUN 0 7 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 6/5/2000 | |
| | | | date mailed notice | |
| SM | courtroom deputy's initials | | SM | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| TY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 99 C 2057 |
| v. | ) |
| | ) Magistrate Judge Ian H. Levin |
| THE JONES GROUP, INC., | ) |
| | ) |
| Defendant. | ) |

DOCKETED
JUN 0 7 2000

### MEMORANDUM OPINION AND ORDER

At issue before the court is Plaintiff Ty Inc.'s ("Ty") Motion for Preliminary Injunction. For the reasons set forth below, Plaintiff's Motion is granted.

### FACTUAL BACKGROUND

Since 1993, Ty has sold plush toys throughout the United States under the name "BEANIE BABIES." Ty has also licensed the BEANIE BABIES mark for use in McDonald's promotions in 1997, 1998 and 1999. BEANIE BABIES have become somewhat of a national phenomenon as evidenced by dozens of newspaper and magazine articles, television news stories, web sites and books and magazines devoted to BEANIE BABIES. (*See* Pl. Mot. at 2.)

Ty has obtained U.S. Federal Trademark Registrations for the marks BEANIE BABIES and THE BEANIE BABIES COLLECTION. Ty claims that it owns common law trade mark rights in the mark BEANIE, which was initially used by Ty and the public as early as May of 1995, as a nickname for BEANIE BABIES. *Id.* at 3.

Defendant, Jones Group ("Jones"), in conjunction with NASCAR, corporate sponsors and individual NASCAR drivers, manufactures and sells plush toys under the name Beanie Racers.

Beanie Racers are shaped like race cars and they are made from similar material as and are similar in size to Beanie Babies. Jones claims that it owns the exclusive rights to the registered mark BEANIE RACER.[1]

Ty filed the present lawsuit against Jones alleging that Ty purportedly owned a common law trademark to the word "Beanie," and alleging that Jones infringed that common law trademark by using the mark BEANIE RACERS for its bean bag racing cars. Ty claims that Jones' strategy for marketing its Beanie Racers is similar to that used by Ty for its Beanie Babies, namely: Jones avoids selling its products to mass marketers in favor of specialty stores and limits the production of certain styles of Beanie Racers in order to enhance their collectability. *Id.* at 4. Ty also notes that Jones markets its Beanie Racers by making overt references to Ty's Beanie Babies. For example, one of Jones' advertisements states that "[e]ach Beanie Racer is constructed from a plush material (like Beanie Babies)...." *Id.* at 4; Ex. A. Finally, Ty contends that the retailers of Jones' Beanie Racers are advertising these products on the Internet using Ty's registered trademark BEANIE BABIES in the metatags[2] of Internet sites that sell Beanie Racers. *Id.* at 5.

## ANALYSIS

### I.   PRELIMINARY INJUNCTION STANDARD

---

[1]Ty contends that Jones does not have a federal, state or any reported foreign trademark registration for the mark BEANIE RACERS, but rather, Jones has merely filed an intent-to-use trademark application.

[2]Metatags are HTML code not visible to Internet users, but used by search engines in determining which sites correspond to the keywords entered by an Internet user. *Id.* at 5.

In order to succeed on a motion for a preliminary injunction, the movant has the burden of proving: (1) that it has no adequate remedy at law; (2) that it will suffer irreparable harm if the preliminary injunction is not issued; (3) that the irreparable harm it will suffer if the preliminary injunction is not issued outweighs the irreparable harm that the nonmovant will suffer if the injunction is issued; (4) that it has a reasonable likelihood of prevailing on the merits; and (5) that issuing the injunction will not harm the public interest." *Brunswick Corp. v. Jones*, 784 F.2d 271, 273-74 (7th Cir.1986). *See, Lawson Products, Inc. v. Avent, Inc.*, 782 F.2d 1429, 1432 (7th Cir.1986); *Roland Machinery Co. v. Dresser Ind.*, 749 F.2d 380, 382-88 (7th Cir.1984).

In the context of a motion for a preliminary injunction in a trademark infringement case, a plaintiff need only show that he or she has a "better than negligible" chance of succeeding on the merits in order to justify the issuance of an injunction. *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir.1987). *See Curtis v. Thompson*, 840 F.2d 1291, 1296 (7th Cir.1988); *Brunswick Corp.*, 784 F.2d at 275 ("Although the plaintiff must demonstrate some probability of success on the merits, 'the threshold is low. It is enough that the plaintiff's chances are better than negligible....'" (*quoting Omega Satellite Products Co. v. City of Indianapolis*, 694 F.2d 119, 123 (7th Cir.1982)).

## II.    TRADEMARK INFRINGEMENT STANDARD

In a trademark infringement claim, the plaintiff must prove: "(1) the validity of its trademark; and (2) the infringement of that mark." *Platinum Home Mortgage Corp. v. Platinum Financial Group, Inc.*, 149 F.3d 722, 726 (7th Cir.1998). *See Echo Travel, Inc. v. Travel Associates, Inc.*, 870 F.2d 1264, 1266 (7th Cir.1989). "The validity of a mark pertains to whether a 'word, term, name, symbol or device,' 15 U.S.C. § 1125(a)(1), is entitled to protection

3

under trademark law by focusing on whether the mark specifically identifies and distinguishes one company's goods or services from those of its competitors." *Platinum Home*, 149 F.3d at 726. "The infringement of a mark concerns whether the actions of a subsequent user of a substantially similar or identical mark causes a *likelihood of confusion* among consumers as to the source of those specific goods or services." (emphasis added) *Id.*

## ANALYSIS

### I.   TRADEMARK INFRINGEMENT

#### A. Inadequate Remedy/Irreparable Harm

In order to succeed on a motion for preliminary injunction, a plaintiff must prove that it has an inadequate remedy at law and that it would suffer irreparable harm if a preliminary injunction does not issue. *Ty, Inc. v. Westhighland Publishing, Inc.*, 1998 WL 698922, *19 (N.D.Ill.1998). "These two elements are often merged because they involve the same analysis." *Id. See, e.g., Meridian Mut. Ins. Co.*, 128 F.3d at 1120. Our Seventh Circuit court has often recognized that "'...damages occasioned by trademark infringement are by their very nature irreparable and not susceptible of adequate measurement for remedy at law....'" *International Kennel Club of Chicago, Inc.*, 846 F.2d at 1092 (*quoting Processed Plastic Co. v. Warner Communications*, 675 F.2d 852, 858 (7th Cir.1982)). "'This presumption, it appears, is based on the judgment that it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to goodwill, caused by such violations." *Westhighland Publishing*, 1998 WL 698922 at *20 (*quoting Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir.1992)).

Defendant argues that Plaintiff's lengthy delay in seeking injunctive relief shows that there is no threat of irreparable harm. Defendant notes that Plaintiff waited eight months after filing its suit before it sought injunctive relief. "While irreparable harm is generally presumed in the usual trademark infringement case, that presumption is overcome where the plaintiff delays in seeking injunctive relief." *Ohio Art Co. v. Lewis Galoob Toys, Inc.*, 799 F.Supp. 870, 887 (N.D.Ill.1992). Defendant sites to several cases as examples of delays that have resulted in courts denying injunctive relief. *See, Johnson Publishing, Co., Inc. v. Willits Designs Int'l, Inc.*, 1998 WL 346618 (N.D.Ill.1998) (no irreparable harm where plaintiff waited four months to file motion for preliminary injunction); *Stokley-Van Kamp, Inc. v. Coca-Cola Co.*, 1987 WL 6300 (N.D.Ill.1987) ("extraordinary remedy" of preliminary injunction denied where plaintiff chose to wait three months before filing suit where defendant was spending substantial amounts to market its product); *Borden, Inc. v. Kraft, Inc.*, 1984 WL 1458 (N.D.Ill.1984) (plaintiff's delay of almost six months before bringing suit indicates no irreparable harm).

Plaintiff maintains that when it filed the instant suit, it indicated to Defendant that it would be seeking a preliminary injunction. Moreover, according to Plaintiff, Defendant cannot avail itself of a laches defense because it knowingly infringed on Plaintiff's rights and because it was not lulled into a false sense of security. "Delay, in itself...does not preclude the finding of irreparable injury in a trademark case in this circuit." *Phillip Morris, Inc. v. Allen Distributors, Inc.*, 48 F.Supp.2d 844, 854 (S.D.Ind.1999). "[D]elay is only one among several factors to be considered; [the] cases do not support a general rule that irreparable injury cannot exist if the plaintiff delays in filing its motion for a preliminary injunction." *Ideal Industries, Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1025 (7th Cir.1979), *cert. denied*, 447 U.S. 924, 100 S.Ct.

3016, 65 L.Ed.2d 1116 (1980). A defendant must have been "lulled into a false sense of security or...acted in reliance on the plaintiff's delay." *Id.*

In response to the cases cited by Defendant, which seemingly support its argument that Plaintiff's eight-month delay in filing the instant motion is long enough to preclude an entry by this court in Plaintiff's favor, Plaintiff cited several cases which support the proposition that an eight-month delay does not preclude issuance of a preliminary injunction in Plaintiff's favor. *See, Ideal Industries, Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1025 (7th Cir.1979) (preliminary injunction not precluded where plaintiffs waited seven months to file suit and eight months thereafter to move for preliminary injunction); *Whistler Corp. v. Dynascan Corp.*, 1988 WL 142216 (N.D.Ill.1998) (delay of over one year did not preclude finding of irreparable harm; "the period of delay prior to a motion for preliminary injunction in an intellectual property case is only one factor considered by a district court in determining whether a movant has demonstrated irreparable harm"); *American Express Co. v. American Express Limousine Service Ltd.*, 772 F.Supp. 729 (E.D.N.Y.1991) (16-month delay not a defense to a preliminary injunction where no prejudice caused).

Accordingly, this court finds that the harm Plaintiff may suffer cannot be calculated in monetary terms and that Plaintiff will suffer irreparable harm if a preliminary injunction is denied. While Plaintiff may have delayed in bringing its motion for preliminary inunction, it cannot be said that this minimal delay lulled Defendant into a false sense of security, nor that the delay was unreasonable.

**B. Balancing of the Harms**

Having determined that Plaintiff will suffer irreparable harm if an injunction does not issue, the court must balance that harm against the harm Defendant will suffer if a preliminary injunction is granted. The court does recognize that Defendant may be injured in its business by an order preventing it from selling its "Beanie Racers" under such a name. The court is also aware that Defendant incurred the expense of retaining counsel to research Plaintiff's marks before filing its own marks. However, Defendant conceded that it had full knowledge of Plaintiff's trademarks prior to adopting its mark. In assessing Defendant's irreparable harm, the court excludes the burden it voluntarily assumed by proceeding in the face of a known risk. *Floralife, Inc. v. Floralife Int'l, Inc.*, 633 F.Supp. 108, 114 (N.D.Ill.1985). "'One entering a field already occupied by another has a duty to select a trademark that will avoid confusion,' *Ideal Industries* [*v. Gardner Bender, Inc.*,] 612 F.2d [1018] at 1026 [(7th Cir.1979)]; one who fails in this duty cannot later 'complain that having to mend its ways will be too expensive.' *Processed Plastic Co. v. Warner Communications*, 675 F.2d 852, 859 (7th Cir.1982).

In addition, Plaintiff stands to suffer significantly if a preliminary injunction is not entered, as Plaintiff could lose control of its reputation and goodwill. Plaintiff would risk losing years of nurturing its business.

Moreover, the court deems that an appropriate injunction bond, pursuant to Federal Rule of Civil Procedure 65(c), can compensate Defendant for any harm likely to occur from the preliminary injunction. This bond factor thus weighs in favor of Plaintiff on this issue. *See, Gateway Eastern Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1140 (7th Cir.1994) ("So long as an adequate bond is posted during the injunction, Defendant will not suffer irreparable harm.")

7

In light of these considerations, the court is satisfied that the harm which may be suffered by Defendant if an injunction is granted does not outweigh Plaintiff's harm if relief is denied.

### C. Likelihood of Success on the Merits

In order to prevail in an action under § 43(a) of the Lanham Act, a plaintiff must establish "(1) that it has a protectable trademark, and (2) a 'likelihood of confusion' as to the origin of the defendant's product." *Int'l Kennel Club*, 846 F.2d at 1084 (*quoting A.J. Canfield v. Vess Beverages, Inc.*, 796 F.2d 903, 906 (7th Cir.1986)). As discussed *supra*, a plaintiff must prove that it has a "better than negligible chance of succeeding on the merits" of its case. The court will analyze not whether Plaintiff will or will not prevail on the merits, but rather whether Plaintiff has demonstrated a better than negligible chance of establishing the "trademark" and "likelihood of confusion" prongs under § 43(a).

### 1. Protectable Trademarks – Genericness

It is undisputed that Ty has registered the marks BEANIE BABIES and THE BEANIE BABIES COLLECTION with the United States Patent and Trademark Office. The heart of the dispute concerns the term "Beanie," over which Ty avers that it has acquired protection despite the fact that it does not have a registered trademark over the term. The source of protection, according to Plaintiff, is § 43(a) of the Lanham Act. Specifically, Plaintiff maintains that the "Beanie" mark is not only the predominant word in its registered BEANIE BABIES mark, but also has been associated with its BEANIE BABIES plush toys since at least May of 1995. (*See* Pl. Mot. at 7.) Furthermore, Plaintiff states that the shortened mark, "Beanie," has been extensively used by third parties to refer to Plaintiff's BEANIE BABIES plush toys since May

1995.[3] It is necessary for this court to determine first, what kind of protection, if any, Plaintiff

has over the unregistered mark "Beanie."

"When the identifying 'word, term, name, symbol or device' claimed as a trade name or

mark is not registered with the United States Patent and Trademark Office, the burden is on the

claimant...to establish that it is entitled to protection under § 43(a) of the Lanham Act."

*Platinum Home*, 149 F.3d at 727 (*quoting Mil-Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d

1153, 1156 (7th Cir.1996)). The first step in determining whether an unregistered mark or name

is entitled to protection of the trademark laws is to categorize the name according to the nature of

the term itself. Generally, marks are classified into five categories of increasing distinctiveness:

(1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. *Platinum Home*, 149

F.3d at 727; *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767-68, 112 S.Ct. 2753, 120

L.Ed.2d 615 (1992). The Seventh Circuit Court in *Platinum Home*, explained these terms and

the corresponding levels of protection as follows:

> In general, the level of trademark protection available corresponds to the distinctiveness
> of the mark. *Id.* A **generic** term is one that is commonly used and does not identify any
> particular source and, therefore, is not entitled to any trademark protection. *Liquid
> Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir.1986). A **descriptive**
> mark is one that "describes the ingredients, qualities, or characteristics of an article of
> trade or a service" and, generally, it is not protected as a trademark because a merely
> descriptive mark is a "'poor means of distinguishing one source of services from
> another.'" *Id.* (*quoting M.B.H. Enters v. WOKY, Inc.*, 633 F.2d 50, 54 (7th Cir.1980)).
> However, a descriptive mark may receive trademark protection if it acquires **secondary
> meaning** "in the collective consciousness of the relevant community." *Mil-Mar Shoe*, 75
> F.3d at 1157 (*citing Gimix, Inc. f. JS&A Group, Inc.*, 699 F.2d 901, 907 (7th Cir.1983)).
> Finally, terms that are either **suggestive, arbitrary** or **fanciful** are automatically entitled

---

[3]Plaintiff points out that nicknames such as COKE, BUD, MET and HO-JO have received
trademark protection as shortened marks.

to trademark protection because they are inherently distinctive. *Two Pesos*, 505 U.S. at 767-68, 112 S.Ct. 2753. (emphasis added)

It is Plaintiff's position that the mark "Beanie" is not generic, but rather arbitrary, fanciful or even suggestive, and that if the mark is considered descriptive, it has acquired secondary meaning. There are several factors which can be considered when determining whether a particular mark is generic. Those factors include: (1) competitors' use; (2) plaintiff's use; (3) dictionary definitions; (4) media usage; (5) testimony of persons in the trade; and (6) consumer surveys. 2 *McCarthy on Trademarks and Unfair Competition* § 12:13 (4th ed. 1997).

### a. Competitors' Use

Under this factor, genericness can be shown by generic use of the mark by competitors which has not been contested by the plaintiff. Plaintiff contends that the mark is not generic based on the fact that it has rigorously policed the use of the mark by competitors. Plaintiff produced over 800 pages of documents to Defendant in response to discovery requests in this case, evidencing dozens of cease and desist letters sent to third parties using the mark. (*See* Pl. Reply at 6.)

### b. Plaintiff's Use

Under this factor, if the proponent of trademark status itself uses the term as a generic name, this is strong evidence of genericness. 2 *McCarthy on Trademarks and Unfair Competition* § 12:13 (4th ed. 1997). Plaintiff argues that it has never used the word "Beanie" in a generic manner, nor to refer to products from sources other than Plaintiff.

### c. Dictionary Definitions

Dictionary definitions, while not determinative, are relevant and sometimes persuasive in determining public usage. However, dictionary definitions cannot be conclusive of genericness. *Id.* Merriam Webster's Collegiate Dictionary (10th Ed. 1993) defines "beanie" as "a small round tight-fitting skullcap worn esp. by schoolboys and college freshmen." This is different from the meaning allegedly attributed to the mark "Beanie," a generic plush, pellet filled toy, and it supports Plaintiff's argument that mark "Beanie" is not generic.

### d. Media Usage

Generic usage in the media, such as in trade journals and newspapers can be used as evidence to prove genericness. 2 *McCarthy on Trademarks and Unfair Competition* § 12:13 (4th ed. 1997). Plaintiff has shown, via numerous exhibits, that newspapers and magazines from across the country have consistently used the term "Beanie" to refer to Plaintiff's products.

### e. Testimony of Person in the Trade

"The understanding of those who are familiar with the marketplace usage of the designation in question can be helpful evidence on the genericness issue." *Id.* Defendant points out that Harold A. Nizamian, the founder of R. Dakin & Company and a toy industry veteran, testified that the term "bean bags" refers to "soft toys in the shape of animals that are filled with materials such as plastic pellets, crushed shells, or similar materials, to give the toys a soft floppy feel." (*See* Def. Sur-Reply at 2.) He also testified that "bean bags" have "become generic to the toy industry: many companies have sold and do sell beanbags."[4] *Id.* It is Defendant's position

_____

[4]Plaintiff contends that Nizamian's declaration actually supports its position that the "Beanie" mark is protectable because Nizamian never uses the word "beanie" to describe the toys in question, but rather refers to the products as "bean bags" and "plush toys." It is Plaintiff's position that the fact that Nizamian states that "Bean Bags have become generic to the toy

that "Beanie" simply refers to "Bean Bags." Defendant supports this position by pointing to nearly 1500 documents extracted from the Internet, which show that "Beanies"are being sold/auctioned by consumers and companies that are in no way affiliated with Ty, Inc. However, the pages displaying auctions of non-Ty products using the "Beanie" mark account for only a very small percentage of all Internet auctions of bean bag products using the name "Beanie." Plaintiff's Internet search showed that 80% of the products for sale on Yahoo!'s auctions sites and 92% of the products for sale on ebay's auction sites using the term "beanie" are in fact Ty products.

### f. Consumer Surveys

Consumer surveys may also provide evidence to prove genericness. Plaintiff notes that a survey that it conducted indicated that 72.6 percent of the respondents thought that "Beanies" and "Beanie" "either meant or referred to Beanie Baby/Babies or Ty or referred to a toy made or put out by Beanie Baby/Babies or Ty." (*See* Pl. Reply at 7.)

Defendant argues that the consumer survey relied upon by Plaintiff is flawed because it was performed for another of Plaintiff's cases and because it was conducted telephonically. However, Plaintiff correctly points out that the survey, although conducted for another case, only addressed the public's perception of the mark "Beanie," which is directly at issue in this case. In addition, McCarthy states that "[s]urveys taken at home in person or by telephone should not be discounted or denigrated, but accepted as probative evidence if properly conducted." 2

---

industry" does not mean that the word "beanie" is generic. (*See* Pl. Sur-Resp. at 6.)

discounted or denigrated, but accepted as probative evidence if properly conducted." 2

*McCarthy on Trademarks and Unfair Competition* § 32:163 (4th ed. 1997).

Both Plaintiff and Defendant have submitted declarations from survey experts regarding the validity of the survey relied upon by Plaintiff. The declarations directly contradict one another. Nevertheless, the court has given appropriate weight to both opinions as part of its ultimate conclusion regarding genericness (See discussion at pp. 15-17 *infra*).

### g. Conclusion

In view of the fact that Plaintiff has prevented other competitors from using the "Beanie" mark by rigorously policing its use, the fact that Plaintiff has not used the mark "Beanie" generically itself, the dictionary definition of the word "Beanie" and the media's use of the term "Beanie," this court concludes that Plaintiff has a better than negligible chance of proving that the "Beanie" mark is not generic.

### 2. Secondary Meaning[5]

As discussed *supra*, if a mark is arbitrary, fanciful or suggestive, trademark status is established and no secondary meaning is required. If, however, a mark is deemed generic or descriptive, it is protectable only upon a showing of secondary meaning. "To identify the difference between descriptive and suggestive words and to appreciate the inherent distinctiveness of a suggestive mark as compared to one that is merely descriptive the 'degree of imagination test' is applied." *Platinum Home*, 149 F.3d at 727. This test, as articulated by the

---

[5]The court has reached a conclusion as to the genericness of the "Beanie" mark. However, the court has not expressed an opinion as to whether the mark is descriptive, arbitrary, fanciful or suggestive. Therefore, the court will explore whether the mark has acquired secondary meaning.

court in *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 952 (7th Cir.1992), provides, "if a mark imparts information directly it is descriptive. If it stands for an idea which requires some operation of the imagination to connect it with the goods, it is suggestive."

Plaintiff contends that the "Beanie" mark is fanciful or arbitrary, thus deserving the greatest amount of protection. At the very least, Plaintiff argues, the "Beanie" mark is deserving of automatic trademark protection because the mark is suggestive rather than descriptive. Plaintiff also maintains that the term "Beanie" does not describe or refer to any characteristic of its plush animals, and that it is a term that requires some imagination to connect the name "Beanie" with a pellet and fiber filled plush animal. (*See* Pl. Reply at 8.) It is Defendant's position that the term "Beanie," regardless of whether it is classified as generic or descriptive, has not acquired secondary meaning.

"Secondary meaning refers to the manner in which a consumer identifies a specific business or a business's reputation by a particular trademark." *Platinum Home*, 149 F.3d at 728. "A mark acquires secondary meaning when it has been used so long and so exclusively by one company in association with its products or services in that particular industry that the 'word, term, name, symbol, or device; has come to mean that those products or services are the company's trademark." *Platinum Home*, 149 F.3d at 728 (*quoting Gimix, Inc. v. JS&A Group, Inc.*, 699 F.2d 901, 907 (7th Cir.1983)). "To establish secondary meaning, a court may consider several factors to decide whether secondary meaning has been acquired or established: (1) the amount and manner of advertising; (2) the sales volume; (3) the length and manner of use; (4) consumer testimony; and (5) consumer surveys." *Id. See Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1085 (7th Cir.1988).

### a. Amount and Manner of Advertising

"Advertising is relevant because it is the means by which a manufacturer establishes its trademark in the minds of consumers as an indication of origin from one particular source: it is especially persuasive if the exposure has been 'massive.'" *Gimix, Inc.*, 699 F.2d at 907. *See FS Services, Inc. v. Custom Farm Services, Inc.*, 471 F.2d 671, 674 (7th Cir.1972). While Plaintiff does not directly advertise its Beanie Babies, it has received "massive" publicity in connection with its toys, in a variety of media including newspapers, magazines, television and radio.

### b. Sales Volume

High sales volume can be used as circumstantial evidence that a mark has acquired secondary meaning. *Gimix, Inc.*, 699 F.2d at 907. Plaintiff has sold over one billion Beanie Babies since the inception of the product. In addition, McDonalds has run three separate promotions involving Beanie Babies. More than 300 million Beanie Babies were distributed in connection with these promotions.

### c. Length and Manner of Use

Both the length and manner of use of a disputed mark can serve as circumstantial evidence that a mark has acquired secondary meaning. *Id.* Plaintiff has used the term "Beanie" in association with its Beanie Babies since May 1995. "Beanie" has also been used by third parties to refer exclusively to BEANIE BABIES since that date. In addition, the term "Beanie" has been used by Ty directly on its packaging for certain products since July 1997.

Defendant claims that the term "Beanie" has not been used long enough to acquire secondary meaning. (*See* Def. Resp. at 6.) Defendant sites to *Platinum Home*, in which the court determined that secondary meaning had not been established because the plaintiff had used its

mark for only three years. 149 F.3d at 728. However, the court went on to say that "length of time by itself is not a determinative factor." *Id.* Accordingly, the fact that Plaintiff has used the name "Beanie" on packaging since July 1997 does not preclude a finding of secondary meaning.

### d. Consumer Surveys[6]

As discussed *supra*, Plaintiff has presented evidence of a consumer survey which shows that 72.6 percent of consumer participants thought "Beanies" and "Beanie" "either meant or referred to Beanie Baby/Babies or Ty or referred to a toy made or put out by Beanie.

Defendant submitted declaration of Phyllis J. Welter[7] who concludes that the survey conducted by Ty does not measure secondary meaning, and that no data is available to determine how many survey participants thought that the terms at issue referred only to one particular brand or source. In addition, Welter concludes that Ty's survey lacked adequate control and contained a potential bias based on the fact that the survey failed to include individuals under that age of 18. Welter's analysis of the data leads her to determine that any alleged secondary meaning for the terms "Beanie" and "Beanies" is not 72.6% as reported by Ty, but rather cannot be said to exceed 22%, a figure that is generally insufficient to show secondary meaning.

Plaintiff submitted a declaration from Dr. E. Deborah Jay, who conducted the survey in question. Dr. Jay explains that Welter's criticisms are based on erroneous assumptions and calculations and are in conflict with widely recognized survey techniques, including those

---

[6]The fifth factor is consumer testimony. However, Plaintiff does not present any evidence of consumer testimony in arguing that its mark has acquired secondary meaning.

[7]Phyllis J. Welter is the President of Survey Counsel, Inc., and she specializes in the analysis of consumer surveys for purposes of consulting and testifying in legal proceedings involving trademark and unfair competition issues.

recognized by Welter herself. Dr. Jay states that the Field Survey included 942 individuals, but Welter's analysis was based on results for no more than 535 of the 942 survey respondents. In fact, Dr. Jay argues that Welter reached her conclusion that no more than 22% of respondents think "Beanies" means Beanie Babies/Ty by completely ignoring the responses of the 316 individuals who were asked about the term "Beanie"[8] and throws out almost one-third of the responses from the 311 people asked about the term "Bean Bags." Dr. Jay also notes that Welter improperly and inconsistently coded field survey responses, analyzed only a subset of interviews with eligible adults and did not conduct any scientific surveys of her own.[9]

"In order to indicate secondary meaning, consumer surveys must prove more than a 'relatively small amount of people' associate the mark with the source of the product. 2 McCarthy at § 15:42." *Yankee Spirits, Inc. v. Gasbarro*, 1998 WL 428092, *9-10 (D.Mass.1998). In this case, although both experts refute one another's contentions, this court cannot say, as a matter of law, that the Plaintiff's survey is so flawed such that it should be disregarded in its entirety. Although Plaintiff's survey is not perfect, and thus not conclusive evidence of secondary meaning, this court finds that Plaintiff's survey establishes some evidence that Plaintiff's mark has attained secondary meaning.

### e. Conclusion

---

[8] 315 individuals were interviewed about the term "Beanies," 316 about the term "Beanie" and 311 about the term "Bean Bags."

[9] Dr. Jay notes that Welter did not conduct any surveys on her own despite stating in her book *Trademark Surveys*, that "to merely criticize plaintiff's survey evidence without offering a counter survey sometimes results in the criticism being discounted."

In light of the foregoing, this court concludes that Plaintiff's use of the term "Beanie," combined with the widespread publicity, high sales volume and the result of Plaintiff's consumer survey, clearly render the chances of establishing that the "Beanie" name has acquired secondary meaning better than negligible.

### 3. Likelihood of Confusion

In making the determination as to whether Plaintiff has a better than negligible chance of succeeding on the merits, it is also necessary to examine whether there is a "likelihood of confusion as to the origin of the defendant's product." *McGraw Edison Co. v. Walt Disney Productions*, 787 F.2d 1163, 1167 (7th Cir.1986). In determining whether there is a likelihood of confusion, the Seventh Circuit has considered several factors to be important: (1) similarity of the marks; (2) similarity of the products; (3) area and manner of advertising and use; (4) degree of care likely to be used by consumers; (5) strength of plaintiff's mark; (6) whether any actual confusion exists; and (7) defendant's intent to palm off its goods as those of plaintiff. *Id.* at 1167-68. *See Helene Curtis Industries, Inc. v. Church and Dwight Co., Inc.*, 560 F.2d 1325, 1330 (7th Cir.1977), *cert. denied*, 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978).

"'None of these factors by itself is dispositive of the likelihood of confusion question, and different factors will weigh more heavily from case to case depending on the particular facts and circumstances involved.'" *Int'l Kennel Club*, 846 F.2d at 1086 (*quoting Marathon Manufacturing Co. v. Enerlite Products Corp.*, 767 F.2d 214, 218 (5th Cir.1985). In other words, "'[t]he weight and totality of the most important factors in each case will ultimately be determinative of the likelihood of confusion, not whether the majority of the factors tilt the scale in favor of one side or the other.'" *Ty, Inc. v. West Highland Publishing, Inc.*, 1998 WL 698922

18

(N.D.Ill.1998) (*quoting Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1187 (7th Cir.1989)).

### a. Similarity of the Marks

In determining whether two marks are similar, "the proper method of comparison is conducted 'in light of what occurs in the marketplace, not in the courtroom.'" *S Industries, Inc. v. JL Audio, Inc.*, 29 F.Supp2d 878, 892 (N.D.Ill.1998) (*quoting Forum Corp. of North Am. v. Forum Ltd.*, 903 F.2d 434, 439 (7th Cir.1990)). Plaintiff claims that the BEANIE RACERS mark used by Defendant is identical to its "Beanie" mark. Defendant, on the other hand, contends that the marks at issue are not identical because Plaintiff's *registered* mark is BEANIE BABIES, while Defendant's registered mark is BEANIE RACER.[10] Defendant also contends that the marks are not identical because all of Plaintiff's Beanie Babies contain a distinctive and well-known red, heart-shaped hang tag containing the "Ty" logo.

While Defendant puts weight on the differences between its mark and Plaintiff's mark, the Seventh Circuit has recognized that "if one word or feature of a composite trademark is the salient portion of the mark, it may be given greater weight than the surrounding elements." *Henri's Food Products Co., Inc. v. Kraft, Inc.*, 717 F.2d 352, 356 (7th Cir.1983). Accordingly, the court finds that the similarity of the marks favors Plaintiff because there is a better than negligible chance that consumers would view the marks as similar and as source identifying.

### b. Similarity of the Products

---

[10]It should be noted that Defendant is arguing the dissimilarities between the two registered marks (BEANIE BABIES and BEANIE RACERS). However, the mark in issue is the "Beanie" mark, and, as discussed *supra*, Plaintiff has a better than negligible chance of showing that the "Beanie" mark is entitled to protection.

In analyzing the similarity of products, the question is "whether the products are the kind the public attributes to a single source." *Knaack Manufacturing Co. v. Rally Accessories, Inc.*, 955 F.Supp.991, 1000 (N.D.Ill.1997). Plaintiff notes that both itself and Defendant sell soft, pellet-filled, eight to nine inch plush toys made from velboa fabric that are encompassed within the International Trademark Class 28. Defendant argues that Beanie Racers are not the type of product which Ty customers would expect to associate with Ty.

However, Defendant's advertisements for its Beanie Racers highlight the similarities between the two products. Defendant's advertisements state that "Beanie Racers" toys "are constructed from plush fabric like Beanie Babies." (*See* Pl. Reply at 13; Exhibits A & B). The court finds that the similarity of the products slightly favors Plaintiff in light of the fact that they are both small stuffed objects and that Defendant compares its product to that of the Plaintiff in its own advertisements.

### c.  Area and Manner of Concurrent Use

The concurrent use factor "'focuses on the overlap of promotion, distribution, and sales of the parties' goods.'" *S Industries*, 29 F.Supp.2d at 891 (*quoting Imperial Toy Corp. v. Ty, Inc.*, 1998 WL 601875 (N.D.Ill.1998)). In determining whether the area and manner of concurrent use as between two marks is likely to cause confusion, cases have tended to focus on "the geographical area of distribution, whether there is evidence of direct competition between the relevant products, whether the products are sold in the same stores, whether the products are sold in the same section of a given store, whether the products are sold through the same 'marketing channels.' *S Industries*, 29 F.Supp.2d at 891-92 (citations omitted).

Plaintiff avers that the manner and use of its Beanie Babies are similar to the manner and use employed by Defendant with respect to its Beanie Racers, such that confusion is likely. Both products are sold only to specialty retailers, and are most likely sold in the same section(s) of such stores. In addition, both products are produced in limited numbers and periodically retired in order to achieve a collectible status. Finally, both Beanie Babies and Beanie Racers are featured in the same or similar magazines.

Defendant maintains that the manner and use are different, and therefore not likely to cause confusion, because it sells its Beanie Racers to three main distributors, none of whom distribute Beanie Babies, while Plaintiff does not use any distributors. The question for determining likelihood of confusion is where the products are sold at the ultimate consumer level, not how the products were distributed at the wholesale level. Furthermore, Defendant notes that nearly 90 percent of its sales of Beanie Racers are in the states of Tennessee and Florida, while Beanie Babies are sold both nationally and internationally. However, Plaintiff is afforded protection from likelihood of confusion in all 50 states, so the fact that Beanie Racers are primarily sold in only two states is unavailing to Defendant.

The court finds that the manner and concurrent use of the "Beanie" mark and Defendant's Beanie Racers are such that there is a better than negligible chance of a likelihood of confusion.

### d. Consumers' Degree of Care

"The degree of care factor seeks to distinguish how likely the relevant group of consumers is to distinguish between different products." *Id.* "As a general rule, 'where 'the cost of the...trademarked product is high, the courts assume that purchasers are likely to be more discriminating than they might otherwise be.' Moreover,...where the product involved was a low

value item, the risk of confusion is greater...." *Id.* (quoting *Maxim's Ltd. v. Badonsky*, 772 F.2d 388, 393 (7th Cir.1985)).

Plaintiff contends that consumers are likely to use little care when purchasing Defendant's products. Plaintiff points to the fact that the parties' products are relatively inexpensive: Beanie Babies sell for around $5, while Beanie Racers sell for around $12, while both are products that consumers may buy on impulse.[11] Plaintiff admits that consumers may not be confused into thinking that Defendant's products are Beanie Babies. However, consumers may nonetheless be confused as to whether Defendant's products are somehow affiliated, connected or associated with Ty because of the use of "Beanie" on the Beanie Racer toys.

Defendant notes that Plaintiff has offered no evidence of any haste or impulse buying of its products, and that Beanie Babies have nothing to do with NASCAR (which is the subject of Beanie Racers). Rather, Beanie Babies all depict living creatures.

The court finds that this factor favors Defendant as consumers are likely to exercise care when purchasing Beanie Babies and Beanie Racers. Due to the tremendous popularity and the fact that Beanie Babies have become collectibles, it is this court's opinion that consumers will exercise more care than in the ordinary case of an inexpensive product.

### e. Strength of the Mark

The strength of a particular mark "measures the likelihood that a consumer will view a mark as source-identifying." *S Industries*, 29 F.Supp.2d at 892. *See Knack Manufacturing*, 955

---

[11]The court notes that Plaintiff's argument is contrary to its representation in another trademark case involving its plush toys. *See Imperial Toy Corp. v. Ty, Inc.*, 1998 WL 601875, *4 (N.D.Ill.1998) ("Ty, Inc. argues that...Beanie Baby customers are sophisticated about the product and will not be confused and will exercise care when purchasing....")

F.Supp at 1001. Although the fact that Plaintiff has not registered the "Beanie" mark does not preclude it from receiving protection over the mark, the court cannot conclude that Ty has a great deal of strength in a mark that Ty does not definitively own.[12]

### f. Actual Confusion

"While proof of actual confusion is not required to prove likelihood of confusion, 'courts often view evidence of actual confusion as the best evidence of likelihood of confusion.'" *Id.* (*quoting Union Carbide, Corp. v. Ever-Ready, Inc.*, 531 F.2d 366, 383 (7th Cir.1976). However, "isolated instances of actual confusion or misdirected mail have been held insufficient to sustain a finding of likelihood of confusion." *Id.* at 383. "De minimis evidence of actual confusion does not necessarily establish a likelihood of consumer confusion." *Platinum Homes*, 149 F.3d at 729.

Plaintiff pointed to only one case of actual confusion as to the source, affiliation, sponsorship or connection between itself and Defendant. Ms. Charity Majher sent a letter to Plaintiff requesting that it replace several Beanie Babies that had been stolen from her home. Included amongst the list of allegedly stolen Beanie Babies were several of Defendant's Beanie Racers. It is clear to this court that one isolated incident of actual confusion falls short of establishing what is necessary to prove likelihood of confusion.

### g. Intent to Palm Off Plaintiff's Goods

---

[12]The court acknowledges the fact that Plaintiff does possess "very strong marks." *Ty, Inc. v. West Highland*, 1998 U.S. Dist. LEXIS 15869, *57-8. However, the marks referred in that case were registered marks as opposed to the unregistered mark at issue in this case.

In order to find trademark infringement, it is not necessary to find proof of the infringer's fraudulent intent. However, such proof supports a finding of likelihood of confusion. *See Ziebart International Corp. v. After Market Associates*, 802 F.2d 220, 227 (7th Cir.1986); *Henri's Food Products Co., Inc. v. Kraft, Inc.*, 717 F.2d 352, 359 (7th Cir.1983).

Plaintiff alleges that Defendant intended to trade on its goodwill when it began selling its Beanie Racers. Plaintiff notes that despite its warning to Defendant that the sale of Beanie Racers constitutes the unauthorized use of its marks, Defendant proceeded to sell and advertise its Beanie Racers. Furthermore, Plaintiff claims that Defendant's use of its marks in the metatags of web sites that sell Beanie Racers is compelling evidence that Defendant's activities were calculated to trade on Plaintiff's goodwill.

Defendant argues that there is no evidence of improper intent based on the fact that Defendant: (1) expended great financial resources to register the mark Beanie Racer; (2) expended great financial resources to license each corporate sponsor for individual Beanie Racer products; (3) expended great financial resources to obtain royalty agreements with drivers of NASCAR race cars and the corporate sponsors of NASCAR race cars; (4) did not employ any marketing strategy which sought the benefit of any property or goodwill of Ty, Inc.; and (5) consulted extensively with legal counsel to establish the intellectual property rights, marks and agreements prior to conducting any sale or manufacture of its Beanie Racer product. (*See* Def. Resp. at 11; Jones Aff., ¶¶ 11-15).

Plaintiff has not produced evidence sufficient to show that Defendant produced its Beanie Racer with the intent to take advantage of Plaintiff's goodwill or to mislead consumers into

believing that its products were somehow affiliated with Ty.[13] *See Breur Electric Mfg. Co. v. The Hoover Co.*, 1998 WL 427595, \*13 (N.D.Ill.1998). The affidavit of Defendant's President shows that Defendant's trademark counsel conducted searches and concluded that marketplace confusion was unlikely, and Defendant relied on this opinion. *Id.*

### h. Conclusion

Upon review of these seven factors, the court finds that some factors weigh heavily in Plaintiff's favor, while others weigh in Defendant's favor. Nevertheless, it is this court's conclusion that Plaintiff has, at bottom, a better than negligible chance of showing likelihood of confusion.

### D. The Public Interest

Defendant has suggested no reason why the issuance of a preliminary injunction would disserve the public interest. "Absent such a showing, the statutory policies favoring trademark protection are determinative." *Floralife, Inc.*, 633 F.Supp. at 116. The Supreme Court has stated that "[b]ecause trademarks desirably promote competition and the maintenance of product quality, Congress determined that 'a sound public policy requires that trademarks should receive nationally the greatest protection they can be given.'" *Park 'N' Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985). *See Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1429-30 (7th Cir.1985). In light of the likelihood that any use of

---

[13]The fact that retailers who sell Beanie Racers happen to use metatags that refer to Plaintiff's marks is not evidence of improper intent on the part of Defendant. It is extremely unlikely that Defendant had any control over the source code used on any of its retailers websites, such that it would be able to influence the terms used as metatags.

Defendant's mark would engender additional confusion in the minds of the public, the court finds that the public interest would be best served by granting Plaintiff's motion.

### E. Conclusion

Plaintiff has shown that it has a better than negligible chance of success on the merits, that it has no adequate remedy at law, that it will suffer irreparable injury in the absence of a preliminary injunction, which is outweighed by the harm Defendant would suffer if the injunction is issued and that the issuance of the injunction will not harm the public interest. Thus, Plaintiff has satisfied its burden in order to succeed on its motion for preliminary injunction.

## II.     TRADEMARK DILUTION

Plaintiff also argues that it is entitled to a preliminary injunction because it has a more than negligible chance of proving that Defendant's use of the "Beanie Racer" name dilutes the distinctive nature of Plaintiff's "Beanie" and "Beanie Babies" marks in violation of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c) and 1127.

According to 15 U.S.C. § 1127, "[t]he term 'dilution' means the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of: (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake or deception. In order to succeed on a trademark dilution claim, a plaintiff must provide sufficient evidence that: "(1) the mark is famous; (2) the alleged infringer adopted the mark after the mark became famous; (3) the infringer diluted the mark; and (4) the defendant's use is commercial and in commerce." *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 639 (7th Cir.1999).

In light of the fact that the court finds in favor of Plaintiff on its trademark infringement claim, it is not necessary to reach a conclusion as to whether a preliminary injunction should be granted on Plaintiff's trademark dilution claim.[14]

## III.    EVIDENTIARY HEARING[15]

Defendant has requested an evidentiary hearing on Plaintiff's motion for the purpose of presenting live witnesses in an effort to contest the motion.  Plaintiff's position is that no evidentiary hearing is necessary because there exists no factual dispute.

The Seventh Circuit, in *Socialist Workers Party v. Illinois State Board of Elections*, 566 F.2d 586, 587 (7th Cir.1977), explained that an evidentiary hearing serves no purpose where "[t]here [is] no factual dispute as to the ground on which the injunction was ordered."  In *Mothers' & Children's Rights Organization v. Sterrett*, 467 F.2d 797, 800 (7th Cir.1972), the court said that an "injunction does not compel and 'evidentiary hearing'...where no facts...need be determined."  *See, Floralife, Inc. v. Floralife Int'l, Inc.*, 633 F.Supp. 108, 117 (N.D.Ill.1985) ("An equally well-settled exception, however, is that when no well disputed factual issues are present, an evidentiary hearing is not necessary."); *Williams v. Curtiss-Wright Corp.*, 681 F.2d 161, 163 (3rd Cir.1982); *Spartacus v. Illinois Indus. Univ.*, 502 F.Supp. 789, 805 (N.D.Ill.1980); 11 Wright & Miller, Federal Practice and Procedure § 2949 at 478-79 (1973).

---

[14]Nevertheless, it bears noting that Defendant did not address Plaintiff's trademark dilution claim in any of its briefs.

[15]In this regard, the court notes that samples of the actual products at issue have previously been shown to the court by the parties.

"[I]n any case in which a party seeks an evidentiary hearing, he must be able to persuade the court that the issue is indeed genuine and material and so a hearing would be productive–he must show in other words that he has and intends to introduce evidence that if believed will so weaken the moving party's case as to affect the judge's decision on whether to issue an injunction." *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir.1997).

Applying the above standard(s), the court is unpersuaded that any genuine and material or well-disputed factual issue exists herein and that an evidentiary hearing would be productive. The court thus concludes that an evidentiary hearing is not necessary in resolving the Motion for Preliminary Injunction and that the Motion is decidable on the papers filed.

## CONCLUSION

In view of the foregoing, Plaintiff's Motion for Preliminary Injunction is granted.[16]


**ENTER:**


**IAN H. LEVIN**
**United States Magistrate Judge**

Dated: June 5, 2000

---

[16]The parties have not addressed the issue of bond prescribed by Federal Rule of Civil Procedure 65(c). Pursuant to Rule 65(c), the preliminary injunction is: (1) stayed pending a timely hearing and determination of a proper bond; and (2) shall issue by appropriate order only upon posting of such bond.