Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 2057 | **DATE** | November 8, 2001 |
| **CASE TITLE** | | *Ty v. Jones* | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Jones' motion for summary judgment [195-1], Jones' motion to strike Ty's Local Rule 56.1(b)(3)(B) response [212-1], and Ty's motion to strike portions of Jones' reply in support of its motion for summary judgment [211-1] or alternatively, for leave to file a surreply [211-2] are denied. The final pretrial order is due by December 14, 2001. Motions in limine are due by November 26, 2001, responses are due by December 7, 2001, and replies are due by December 14, 2001. The court will not consider any untimely motions in limine. The pretrial conference shall be held on December 21, 2001 at 12:00 p.m. Trial will commence on January 2, 2002 at 10:30 a.m. Enter Memorandum and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | NOV 1 3 2001 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RTS | courtroom deputy's initials | 01 NOV -9 PM 4:07 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TY INC., | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    99 C 2057 |
| | ) |
| THE JONES GROUP, INC., | ) |
|     Defendant. | ) |

NOV 13 2001

## MEMORANDUM AND ORDER

Plaintiff Ty manufactures and sells a line of plush bean bag filled toys under the name "Beanie Babies." Defendant The Jones Group manufactures and sells "Beanie Racers," which are plush replicas of miniaturized NASCAR race cars. Ty claims that Jones' use of the word "Beanies" means that it engaged in trademark infringement, unfair competition and dilution.

The following motions are before the court: (1) Jones' motion for summary judgment; (2) Jones' motion to strike Ty's Local Rule 56.1(b)(3)(B) response; and (3) Ty's motion to strike portions of Jones' reply in support of its motion for summary judgment or alternatively, for leave to file a surreply. For the reasons set forth below, all of these motions are denied.

I.  **Background**

    A.  **Jones' Motion to Strike**

Before the court turns to Jones' motion for summary judgment, it will consider Jones' motion to strike Ty's Local Rule 56.1 response. In essence, Jones claims that Ty's response does not admit or deny Jones' statements of material facts as required by the local rules and that it is therefore entitled to have its facts deemed admitted. Local Rule 56.1 requires the nonmovant to submit a concise response to the movant's Local Rule 56.1(a) statement and

controvert it with specific references to the materials relied upon. N.D. Ill. Local Rule 56.1(b)(3)(B). The response must admit or deny the allegations made by the movant. *See, e.g., Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir.1994).

It is true that Ty does not specifically use the terms "admit" or "deny" in its response. Ty also objects to a number of facts based on relevancy. However, Ty's response, for the most part, indicates that it "disputes" or "does not dispute" Jones' facts. The local rules do not require a party to use any magic words to effectively admit or deny facts in the opposing party's statement. Thus Jones' motion to strike is denied. The court will assume that Ty meant to deny disputed facts and to admit undisputed facts. If Ty's intent is unclear, the court will deem Jones' facts as admitted to the extent they are supported by the record.

### B.     Facts

The following facts are derived from the parties' extremely detailed Local Rule 56.1 statements and are undisputed unless otherwise noted. In 1993, Ty, began to sell plush toys called "Beanie Babies." Ty obtained U.S. Federal Trademark Registrations for its "Beanie Babies" and "The Beanie Babies Collection" marks but never registered the word "Beanie" alone. In 1997, 1998, and 1999, Ty licensed the "Beanie Baby" mark for use in McDonald's "Teenie Beanie Baby" promotion. Most but not all Beanie Babies are shaped like animals. Ty also sells "Beanie Buddies" and "Beanie Kids." Ty's "Beanie Babies" products are extremely popular and are among the top selling toys and collectibles in the United States. Each Beanie Baby item has a red heart-shaped hang tag bearing Ty's logo and costs between $5 and $7.

Jones is a licensee of NASCAR and manufactures and sells plush toys under the name "Beanie Racers." Beanie Racers are shaped like race cars with the colors, corporate logos, and racing numbers that appear on actual NASCAR race cars. They cost approximately $12 and

have a white rectangular hang tag with the Beanie Racers mark and information about the NASCAR race car corresponding to that Beanie Racer. At least some Beanie Racers have been displayed in stores alongside other NASCAR products. Beanie Racers are offered for sale by specialty and mass market retailers. Ty has received a letter from a customer asking Ty to replace her Beanie Babies and Beanie Racers.

Jones has filed an intent-to-use trademark application for the name "Beanie Racers." Both Beanie Babies and Beanie Racers are small, plush toys filled with plastic pellets and covered in velboa fabric. Jones has submitted testimony from professionals within the industry opining that no reasonable jury could find that Beanie Racers and Beanie Babies are similar. In contrast, Ty has proffered a nationwide toy survey finding that over 70% of those surveyed identified the words "Beanies" and "Beanie" with Beanie Babies and Ty, and Jones has submitted an affidavit taking issue with the methodology used in the Ty study.

The parties consented to proceed before Magistrate Judge Levin with respect to Ty's motion for a preliminary injunction against Jones preventing it from selling Beanie Racers. Magistrate Judge Levin granted Ty's motion and the Seventh Circuit affirmed. *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891 (7th Cir. 2001). Although Jones subsequently filed for bankruptcy, the automatic stay as to this case has been lifted.

## II. Jones' Motion for Summary Judgment

Before the court considers Jones' motion for summary judgment, it must first resolve Ty's motion to strike portions of Jones' reply memorandum or, alternatively, its motion for leave to file a surreply. Ty claims that Jones' reply memorandum improperly raised new arguments. The court agrees that a reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court. *See Edwards v. Honeywell, Inc.*, 960 F.2d 673, 674 (7th Cir.1992) (a

court may not grant summary judgment on a ground raised for the first time in reply). .
However, a reply brief may and in fact should address the arguments raised by the other party.
*Id.* Because Jones's reply brief did not present new legal theories or arguments, Ty's motion to
strike is denied.

### A.      Standard of Review

Summary judgment is proper when the "pleadings, depositions, answers to
interrogatories, and admissions on file, together with the affidavits, if any, show that there is no
genuine issue of any material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S.
317, 322 (1986). The party opposing the summary judgment motion "may not rest upon the
mere allegations or denials of the adverse party's pleading"; rather, it must respond with "specific
facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The evidence of the
non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti
v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992), *citing Anderson v. Liberty Lobby, Inc.*, 477
U.S. 242, 255 (1986). A court should grant a motion for summary judgment only when the
record shows that a reasonable jury could not find for the nonmoving party. *Valenti v. Qualex,
Inc.*, 970 F.2d at 365; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

A likelihood of confusion is typically a question of fact, "but as with any question of fact,
can be resolved on summary judgment if the evidence is so one-sided that there can be no doubt
about how the question should be answered." *Door Systems, Inc. v. Pro-Line Door Systems,
Inc.*, 83 F.3d 169, 171 (7th Cir. 1996). Because the determination regarding the likelihood of
confusion arising from Jones' use of the "Beanie Racers" mark is a finding of fact, the summary
judgment standard is applied with added rigor. *Dorr-Oliver, Inc., v. Fluid-Quip, Inc.*, 94 F.3d
376, 380 (7th Cir. 1996).

## B. Trademark Infringement

To prevail on a trademark infringement claim, a plaintiff must establish: (1) that its trademark is protectible; and (2) that there is a likelihood of confusion as to the origin of the defendant's product. *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d at 897; *Platinum Home Mortgage Corp. v. Platinum Financial Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). A mark is protectible if a "word, term, name, symbol, or device" specifically identifies or distinguishes one company's goods or services from competitors' goods or services. *Platinum Home Mortgage Corp. v. Platinum Financial Group, Inc.*, 149 F.3d at 726. In turn, likelihood of confusion is a shorthand way of referring to what happens when a competitor's subsequent use of a mark that is similar or identical to the plaintiff's mark causes consumers to think that the defendant's product is affiliated with or sponsored by the plaintiff. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d at 897; *Libman Co. v. Vining Industries, Inc.*, 69 F.3d 1360, 1361 (7th Cir. 1996).

Ty contends that, though it does not hold a registered trademark for the word "Beanie," common-law trademark rights protect its use of the word "Beanie." In contrast, Jones asserts that it is improper to consider the word "Beanie" in isolation and that the words "Beanie Racers" and "Beanie Babies" when taken as a whole do not create a likelihood of confusion as to source. Because Jones' motion and supporting memorandum focuses on the likelihood of confusion, the court will assume that Ty's "Beanie" mark is protectible and will consider whether likelihood of confusion can be determined at the summary judgment stage.

Likelihood of confusion is evaluated in light of what occurs in the marketplace and from a consumers' perspective. *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1115 (7th Cir. 1997). To determine whether a likelihood of confusion exists , the court must

consider seven factors: (1) the similarity of the marks; (2) the similarity of the products; (3) the area and manner of advertising use; (4) the degree of care likely to be used by consumers; (5) the strength of the plaintiff's mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its goods as those of the plaintiff. *Id.* No one factor is dispositive. *Id.* Instead, the court must consider each factor on a case by case basis. *Id.* Here, factual disputes preclude the entry of summary judgment.

### 1. Similarity of the Marks

Jones urges the court to compare the words "Beanie Babies" and "Beanie Racers" as opposed to focusing on its use of the word "Beanie" as part of its mark. However, "if one word or feature of the composite trademark is the salient portion of the mark, it may be given greater weight than the surrounding elements. *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d at 898, *quoting Henri's Food Products Co., Inc. v. Kraft, Inc.*, 717 F.2d 352, 356 (7th Cir. 1983). As the Seventh Circuit recently noted, because "[t]he word 'Beanie' is a well-known and famous part of the Ty mark," it is "the more salient portion of the mark and therefore deserving [of] greater weight." *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d at 899. Thus, the court will give the word "Beanie" greater weight than the surrounding words. *Id.*

When analyzing whether marks are similar, the court considers the sound, appearance, meaning, and connotation of each mark. *See S. Industries, Inc. v. Stone Age Equipment, Inc.*, 12 F. Supp. 2d 796, 813 (N.D. Ill. 1998). In addition, the court evaluates the marks as they are in the marketplace, as opposed to side-by-side. *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d at 898. Here, Jones has failed to establish that the marks are different as a matter of law.

Ty's "Beanie Baby" marks and Jones' "Beanie Racers" mark both obviously contain the word "Beanie." It is true that Beanie Racers have white, rectangular hang tags with NASCAR

information on them, as opposed to Ty's red heart-shaped tags. However, Ty sells additional products featuring the word "Beanie" such as "Beanie Buddies" and "Beanie Kids." Ty also authorized McDonald's "Teenie Beanie Babies" promotion. In light of Jones' use of the word "Beanie" in its mark and the number of other popular Ty "Beanie" items, a reasonable jury could find that the "Beanie Baby" and "Beanie Racers" marks are similar enough to cause a likelihood of confusion regardless of the NASCAR information on the Beanie Racers' tags.

### 2. Similarity of the Products

Both Beanie Babies and Beanie Racers are plush, soft, pellet-filled toys covered with velboa fabric. Most but not all Beanie Babies are shaped like animals while Beanie Racers are shaped like NASCAR race cars. The test for analyzing the similarity of products is whether the products are the type that the public would attribute to a single source. *S. Industries, Inc. v. Stone Age Equipment, Inc.*, 12 F. Supp. 2d at 814. Thus, minor differences that would clearly distinguish the products when placed side-by-side do not refute an inference of confusion in the marketplace. *Libman Co. v. Vining Industries, Inc.*, 69 F.3d at 1362.

Jones claims that this factor favors it, pointing to depositions taken from professionals within the industry to the effect that no reasonable jury could find that Beanie Babies are similar to Beanie Racers. The relevant audience for similarity, however, is customers and prospective customers. *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d at 900. Expert testimony as to what a jury might find is not enough to support the grant of summary judgment when the record shows that a reasonable jury could come to a different conclusion. Both Beanie Babies and Beanie Racers are small stuffed toys with a roughly similar size, fabric, and feel. Because the evidence is not one-sided enough to preclude a reasonable jury from finding that the products are so similar as to come from the same source, Ty is entitled to have a jury resolve this issue.

### 3. Area and Manner of Concurrent Use

The area and manner of concurrent use factor requires the court to consider whether the use, promotion, distribution, or sales of the parties' products are related. *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d at 900. Relevant factors include the relative geographical distribution areas, the presence of any evidence showing that the products compete against each other, whether the products are sold in the same type of store, whether the products are sold in a similar department of a particular store, and whether the product is sold through the same marketing channels. *Id.*

Here, both companies distribute their toys to specialty gift stores and department stores. In addition, both Ty and Jones have advertised their products in some of the same magazines, and both Beanie Babies and Beanie Racers are both marketed as collectibles. It is true that at least some Beanie Racers have been displayed in stores alongside other NASCAR products and that Beanie Racers are also sold by mass market retailers. However, this fact is not overwhelming enough to avoid a jury trial. The evidence shows that Beanie Racers were not always displayed with NASCAR collectibles, and that the marketing, advertising, and places of sale for Beanie Racers and Beanie Babies overlap at least to some degree. This factor thus turns on facts which the jury must determine.

### 4. Consumer's Degree of Care

The court next turns to whether it is likely that the relevant group of consumers will distinguish between Ty's products and Jones' Beanie Racers. *GAE, Inc. v. Clean Air Engineering*, — F.3d —, No. 00-3538, 2001 WL 1158967 *17 (7th Cir. Oct. 2, 2001). Purchasers are generally more discriminating when they are selecting big ticket items. *Id.* If an item is low priced, the risk of confusion is greater. *Id.*

Beanie Babies are priced between $5 and $7, while Beanie Racers cost approximately $12. These are hardly the types of prices that would cause a consumer to agonize and conduct extensive pre-purchase research. Nevertheless, Ty's Beanie Babies have enjoyed wide success in the past few years and are a popular collector's item. Moreover, at least some Beanie Racers are purchased by NASCAR memorabilia collectors. Both of these groups are arguably relatively sophisticated. But, the record does not show that all or even most of the purchasers of Beanie Babies and Beanie Racers are this discerning because casual as well as sophisticated consumers buy Beanie Babies and Beanie Racers.

Hence, the evidence is not one-sided enough to cause a reasonable jury to conclude that all consumers who buy Beanie Racers and Beanie Babies are sophisticated enough to avoid a likelihood of confusion. Once again, this court cannot act as fact-finder so this issue cannot be resolved via a summary judgment motion.

### 5. Strength of the Mark

The strength of a mark refers to "its tendency to identify the goods sold under the mark as emanating from a particular . . . source." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 959 (7th Cir. 1992). Trademarks are classified into the following categories: generic, descriptive, suggestive, arbitrary, and fanciful. *Id.* A generic mark is no more than the common descriptive term for the goods and is not protectible because it is incapable of designating the source of a product. *Technical Pub. Co., div. of Dun-Donnelley Pub. Corp. v. Lebhar-Friedman, Inc.*, 729 F.2d 1136, 1139 (7th Cir. 1984). In turn, a descriptive mark is protectible if it has acquired secondary meaning, while suggestive and arbitrary marks are protectible. *Id.* Ty bears the burden of establishing that the term "Beanie" is not generic. *Id.*

Ty contends that the Beanie mark is entitled to protection because is suggestive or arbitrary. Alternatively, it argues that the word Beanie is descriptive with an acquired secondary meaning. On the other hand, Jones contends that the Beanie mark is generic and that anyone may thus use the word "Beanie."

The record shows that Ty's Beanie Babies have been extremely successful for a number of years and have been featured extensively in the media and in web sites. But is the word "Beanie" merely a common descriptive term for bean bag toys? Ty points to a nationwide toy survey finding that over 70% of those surveyed identified the words "Beanies" and "Beanie" with Beanie Babies and Ty, while Jones takes issue with the methodology used in the Ty study. Th court finds that the word "Beanie" is not purely descriptive and thus is not generic. *See Ty v. Perryman*, No. 99 C 8190, 2001 WL 826893 *9-11 (Jul. 17, 2001), *clarified by* 2001 WL 1223550 (N.D. Ill. Oct 12, 2001). In addition, the record shows that Ty's Beanie Babies mark is strong or, at the very least, that the precise strength of the mark is a material issue of disputed fact. Hence, this factor favors Ty.

### 6. Actual Confusion

Actual confusion is not necessary to establish that there is a likelihood of confusion. *See Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d at 960. Moreover, isolated instances of actual confusion are generally not enough to establish a likelihood of confusion. *Platinum Home Mortgage Corp. v. Platinum Financial Group, Inc.*, 149 F.3d at 729. Ty asserts that consumers are confused, pointing to the letter it received from a customer who wanted Ty to replace her Beanie Babies and Beanie Racers. A Beanie Racer distributor testified that people thought that Beanie Racers were a Ty product. Given this evidence, the court cannot find that Jones has established as a matter of law that there is no actual confusion.

### 7. Intent to Palm Off Plaintiff's Goods

Proof that an entity meant to trade on another entity's good will goes to whether a plaintiff can establish a likelihood of confusion. *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d at 961. Here, Jones sought legal advice regarding its Beanie Racers product and thus claims that its hands are clean. In response, Ty points out that no evidence shows that Jones ever asked its lawyers if it could use (as opposed to register) the Beanie Racers mark. A jury, not the court, will have to resolve this issue.

In sum, after careful consideration of all of the likelihood of confusion factors, the court concludes that Ty has produced enough evidence to withstand Jones' motion for summary judgment. Because a reasonable jury could find that Jones' use of the name "Beanie Racers" is infringing, Jones' motion for summary judgment motion is denied.

## VI. Conclusion

For the reasons stated above, Jones' motion for summary judgment [195-1], Jones' motion to strike Ty's Local Rule 56.1(b)(3)(B) response [212-1], and Ty's motion to strike portions of Jones' reply in support of its motion for summary judgment [211-1] or alternatively, for leave to file a surreply [211-2] are denied. The final pretrial order is due by December 14, 2001. Motions in limine are due by November 26, 2001, responses are due by December 7, 2001, and replies are due by December 14, 2001. The court will not consider any untimely motions in limine. The pretrial conference shall be held on December 21, 2001 at 12:00 p.m. Trial will commence on January 2, 2002 at 10:30 a.m.

DATE: NOV 6 2001

Blanche M. Manning
U.S. District Judge

99cv2057.sj